**In re DYNACO CORPORATION, Debtor.**

**In re DYNACO WEST CORPORATION, Debtor.**

**Bankruptcy Nos. 93–12141, 93–12142.**

United States Bankruptcy Court, D. New Hampshire.

July 27, 1993.

William S. Gannon, Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, NH, A. Davis Whitesell, Cohn, Roitman & Kelakos, Boston, MA, for debtor.

Geraldine B. Karonis, Manchester, NH, Asst. U.S. Trustee.

MEMORANDUM OPINION AND ORDER APPROVING DEBTORS' USE OF CASH COLLATERAL UNTIL APPROPRIATE HEARING CAN BE HELD

JAMES E. YACOS, Bankruptcy Judge.

These cases are before the Court upon the "Debtors' Ex Parte, Emergency Motion For Use Of Cash Collateral And Interim Postpetition Financing" filed July 27, 1993

requesting immediate entry of an interim order authorizing use of cash collateral pursuant to an extensive Post–Petition Credit Agreement for purposes of normal business operating expenses including payment of payrolls due employees for work performed by the employees prior to the chapter 11 filing on July 23, 1993. The order requests this authorization pending a hearing upon earlier motions for similar relief noticed and to be held before the Court on July 30, 1993.

The debtors each filed their petitions for relief after normal office hours on Friday, July 23, 1993 and also at that time filed their respective *Ex Parte,* Emergency Motions for Interim and Final Orders Authorizing Secured Post–Petition Financing on a Superpriority Basis Pursuant to 11 U.S.C. § 364 and Grant of Adequate Protection Pursuant to § 363 (the "Financing Motion"), seeking approval of a post-petition financing arrangement with State Street Bank & Trust Company (the "secured claimant").

The Court on July 26, 1993 advised that it set a hearing on the original Financing Motion for *Friday, July 30, 1993,* but did not grant the interim relief sought in the financing motion because that motion improperly sought to have the rights of the secured claimant locked into this case before the financing motion could be heard and before there could be any meeting of creditors or other organization of creditors in this case to protect the estate. The debtors responded with the present ex parte motion for interim relief filed July 27, 1993 asserting that they need an interim order or otherwise will be forced to close their business operations immediately. The Court rejects the "Hobson's Choice" presented to it by this position taken by these debtors and the secured claimant.

■ The secured claimant has benefitted from the work performed by the employees of these debtors prior to the bankruptcy filing and therefore the secured claimant will not be heard in opposition to payment for the wages due those employees for services which benefitted and created additional collateral for the secured claimant. The happenstance of the filing of the bankruptcy petition before those wages were actually paid should not preclude payment of wages due employees in that context and the debtors are hereby authorized to make the payment of payroll due on *July 29, 1993* out of any funds available including any funds claimed to be cash collateral by the secured claimant. The secured claimant will be, and hereby is, given a replacement lien to cover the use of any cash collateral for that purpose in the same types of collateral as to which the secured claimant had a valid claim of lien prior to the bankruptcy filing.

■ The debtors have also requested authorization to use cash collateral in an amount not to exceed $277,000 through the close of business on July 30, 1993 for other business operational expenses to prevent a closing down of the business operation. In my opinion it is not in the interest of either the secured claimant, the debtors, or the debtors' estate generally to precipitate the closing down of this business due to the filing of the chapter 11 petition on July 23, 1993, and the inability of this Court to give an appropriate hearing and attention to the matter until July 30, 1993.[1] The Court will not be held hostage to that threat of closing down the business as a device to force premature approval of a complex financing arrangement of the nature presented in this case. This is particularly true in view of the complex interrelationships between the two corporate debtors and the provision for subrogation of corporate insiders to rights of secured claimant in conjunction with a new letter of credit agreement detailed in paragraph 30 of the July 23, 1993 motion. There are also provisions in the

---

**1.** It is rarely in the interest of a secured claimant with a blanket lien to desire an immediate and complete cessation of the business operation upon a chapter 11 filing since collectibility of outstanding receivables drops dramatically when the business is closed. There is something of the "Bre'r Rabbit" approach (in reverse) to their protestations that the debtor should be thrown into that briar patch unless the secured claimant is *immediately* given all the terms and conditions it demands.

Post–Petition Credit Agreement that arguably may accomplish a *de facto* substantive consolidation of these estates.

While § 363(c)(2) of the Bankruptcy Code does provide that a debtor-in-possession may not use cash collateral unless an entity having a secured interest consents or the Court after a notice and hearing authorizes such use, it is patently impossible for the reorganization court to determine immediately upon a chapter 11 filing that a particular entity does in fact have a valid secured interest safe from any attack available to the debtor or any succeeding chapter 7 trustee under the Bankruptcy Code. Moreover, it is impossible for the reorganization court to determine immediately whether all the provisions included in a complex and extensive financing agreement, such as the Post–Petition Credit Agreement put forward in this case, are fair and equitable to parties involved in the bankruptcy estate, and therefore should be "locked into place" to establish the rights of the secured claimant and to establish restrictions upon the operations of the debtors in reorganization even before at least some minimal opportunity is given to the other parties in interest in the estate to get organized and respond. Finally, it is not always true that continued operation of the business is appropriate. Creditors should have some opportunity to evaluate the alternative of liquidation before the secured claimant is given extensive rights in the post-petition assets of the debtor that may improve its position in such a liquidation. The secured claimant it should be remembered has *no* lien rights to *any* property acquired by the estate after the filing except to the extent that the Court under § 552 allows the secured claim to reach such property after determining that the "equities of the case" do not counsel otherwise.

It is my view that Congress did not intend that a reorganization court have no alternative to the close down of a debtors' business operation, immediately upon the chapter 11 filing, other than to approve ex parte the use of cash collateral under all the terms and conditions extracted by the secured claimant from the debtor with maximum leverage at the outset of the case. I believe that §§ 105(a) and 552 of the Code give the Court power to authorize a continued business operation for a minimal period after the filing until the other interests involved in the estate can get organized, with a provision for adequate protection by a replacement lien to the extent of the funds necessarily used by that operation, and in the same types of collateral already claimed, until an appropriate hearing can be held.

In these circumstances, the Court hereby enters an interim order authorizing use of all funds available to meet the imminent payroll as provided above, with the replacement lien as provided above, and further authorizes the use of such additional sums as may be necessary, not to exceed $277,000, for normal operating expenses through July 30, 1993, on a budget to be agreed upon between the debtors and the secured claimant, with a replacement lien granted to the secured claimant in the same types of collateral as it had at the time of the bankruptcy filing, to the extent that it proves up and establishes that it in fact had a valid security interest at that time.

■ The provisions of this order are subject to a "winding down" proviso, as is provided in all cash collateral orders entered in this District, under which the Court reserves the right to enter such further orders as may be necessary regarding the use of cash collateral to provide for payment of any administrative claims for wage and trade creditors who have supplied goods or services to the debtors during the period of operation under this order which remain unpaid at the time of termination of authorized cash collateral usage, and which goods or services have created additional collateral for the secured claimant.

DONE and ORDERED.